GEORGE MANLEY, et al., v. JAMES A. HEADLEY, et al.

1. ATTACHMENT; *Affidavit for — who must make.* The affidavit to authorize the issue of an order of attachment must be made by the plaintiff, his agent, or attorney.

2. VOID JUDGMENT, *set aside on Motion.* Where without such an affidavit, an order of attachment is issued, real estate seized, service made by publication, and judgment entered by default, there was no jurisdiction of the person or the property, and the entire proceedings will be set aside on motion.

*Error from Atchison District Court.*

ON the 30th of August 1861 an action was commenced in the Atchison district court entitled "The President, Directors and Company of the Bank of the State of Kansas, plaintiff, against James A. Headley and Joseph P. Carr, partners, etc., defendants." Summons was issued and returned "Not found," as to both defendants. On the 7th of December 1861 Robert L. Pease made and filed an affidavit for an order of attach-

ment in said action, setting forth the same cause of action as that stated in the petition, which affidavit, after title and venue, commenced as follows:

"Robert L. Pease being duly sworn deposes and says that he is one of the plaintiffs in the above entitled action, and that said plaintiffs have commenced an action in the said district court to recover the sum of $1200, together with interest on that sum," etc.

The order of attachment was issued; eighty acres of land belonging to defendants were attached. December 12th Pease made an affidavit for an order of publication; publication was made, and at the February Term 1862 judgment upon default was given in favor of the plaintiff, and for the sale of the attached property. The land was sold June 7, 1862, pursuant to said judgment, to Luther C. Challiss, for $1,950, and the sale was confirmed Sept. 26, 1862. Challiss conveyed the property to *George Manley* in 1865, and he was joined in the proceeding to vacate the judgment. On the 17th of February 1871 the defendants *Headley & Carr* appeared specially and filed a motion "to set aside and vacate" the said judgment and "all proceedings had thereunder, because the said court had no jurisdiction of the persons or property of the defendants when said pretended judgment was rendered, and said judgment and proceedings were and are absolutely void," etc., stating the defects appearing upon the record. *James Headley* (the father of *James A. Headley*, one of the defendants in the original action,) claimed to have an interest in the premises by virtue of a mortgage executed on March 7, 1862. The two motions were consolidated, and were heard together at the June Term 1871 of the district court. The motions were sustained, and the judgment and all proceedings thereunder were vacated and set aside. *Manley*, and *The President, &c., of the State Bank, &c.*, excepted, and now bring the record here for review.

*Otis & Glick*, for the Bank, and *John J. Ingalls*, for Manley:

1. The district court erred both in deciding the judgment void, and in refusing to allow the amendments prayed for by

7—10 KAS.

plaintiffs in error. The district court had no jurisdiction of the motions to set aside the judgment. They were barred by the lapse of time. Whether the judgment was absolutely void, or only voidable, is immaterial for the purposes of this branch of the argument. The right to act upon it *by motion* had lapsed before § 575 of the code of 1868 was passed, and this section did not confer this right: see § 14 of code, p. 632; Gen. Stat., 1868; Angell on Lim., §§ 9, 22; 5 Pet., 470; 18 Pick., 532; 19 Pick., 578. These motions were filed under § 575 of the code, February 17th, 1871. The judgment was rendered March 4th, 1862, (at the February Term 1862.) No motion was ever made to open it under § 83 of the code; or to reverse or vacate it on writ of error under § 535; or to vacate or reverse it under § 546 of the code of 1859, (Comp. Laws, 220,) which were the only methods by which the judgment could be so reached under the laws in force at the time it was rendered. The only exception to the limitation prescribed by this law is found in § 523 of the code of 1859; and it is not claimed in these proceedings that the parties making the motions were infants, married women, persons of unsound mind, or that they had no notice of the judgment, and that their motions were made within three years after they had knowledge of it. This judgment could only be attacked, or its validity assailed when some right was sought to be exercised under it, or some remedy invoked by reason of it, with the judgment as the basis of affirmative action.

The rights of Challiss, execution-purchaser, and of Manley, his vendee, to the property sold under the judgment, cannot after this lapse of time, upon an unauthorized motion, on evidence, and without a trial by jury, be thus summarily determined. There was nothing before the district court to invoke its action, and § 575 of the code of 1868 does not retroact and give the court jurisdiction directly, and cannot by implication: Sedgw. Stat. and Con. Law, 195, 197, 202; 7 Johns., 477; 7 Hill, 146; 2 Selden, 463; 2 Comst., 245; 2 Wallace, 328.

2. This being a judgment *in rem*, the court acquired juris-diction by *the issuing of the order of attachment*, and had con-trol of all subsequent proceedings; code of 1859, (Comp. Laws 1862,) § 235; 15 Ohio, 441; 10 Pet., 449; Drake on Attach., § 437. The court having acquired jurisdiction, mere irregu-larities will not affect the validity of the judgment, nor can any irregularities be inquired into in the same or an appellate court after the prescribed time for such inquiry has elapsed, but the judgment must stand as valid and binding: 5 Kas., 525; 5 Ohio St., 270; 13 Ohio St., 446; 15 Ohio, 435; 3 G. Greene, 374; 12 Pet., 718; 12 How., 371, 385; 11 Wall., 581.

3. Both the record of the judgment, and of the proceed-ings to vacate it, show affirmatively the existence of every fact necessary to give jurisdiction to the district court in the original action, and to convey the title to the property in the proceedings under it. It is not denied that Headley & Carr owed the debt upon which the action was brought; that they were non-residents; that they owned the property in contro-versy; that the affidavit for attachment was made and sworn to before the clerk of the court; that the writ of attachment issued; that it was levied upon the property of the defend-ants; that the property was appraised as the property of the defendants; that the writ of attachment and appraisement were returned; that the affidavit for publication required by law was made before the clerk of the court; that publication was duly made stating that the property attached was the property of the defendants, and that the court so found in the judgment; that the publisher of the paper in which said notice was given made an affidavit in proof of such publica-tion; that judgment was rendered; that the property was levied upon, appraised and sold as the property of the defendants; that as the property of the defendants it was purchased and paid for by Challiss, a stranger to the suit; that said sale was confirmed by the court, and deed made to the execution-purchaser, who several years afterward con-veyed the same to Manley. Every step requisite to a legal judgment was actually taken; and the only ground really

upon which this judgment and these proceedings are attacked is, that some of the proof to establish the facts was insufficient, and improperly admitted — a mere question of evidence, of which the court rendering the judgment was the sole and exclusive judge. The question is therefore presented, can the court after this interval declare the judgment void for irregularities merely, which would have been subjects of amendment if called to the attention of the court before judgment was rendered? If irregularities had existed, as the record stood, had not plaintiffs below the unquestioned right to amend in conformity with the facts and in furtherance of justice? Comp. Laws, 146, §§ 147, 148; Code of 1868, §§ 139, 140; 16 Iowa, 102; 5 Kas., 542; 16 Barb., 347; 2 Cowen, 49.

4. The amendments sought to be made by plaintiffs in error were not for the purpose of conferring jurisdiction, or rendering proceedings valid that were fatally defective; but in the language of the code, §§ 139, 140, "in furtherance of justice." And the duty to allow them was imperative. It was not a matter of discretion, as counsel claim. The court *must* disregard any error or defect in every stage of the action, and no judgment shall be *reversed* or *affected*, etc., (§ 140.) Nor is this an extraordinary power, but one that has been uniformly exercised by courts from the earliest times. For recent decisions showing the obligations of courts to amend their records after judgment *nunc pro tunc*, see 3 Minn., 427; 43 N. H., 313, 454, 508; 33 Cal., 480; 35 Georgia, 207; 5 Kas., 542; 4 Kas., 47.

*Horton & Waggener*, for defendants in error:

1. The judgment was absolutely void, and the court committed no error in setting aside the same. The affidavit for attachment shows that it is not made by plaintiffs, their agent or attorney. Pease was not "one of the plaintiffs," as the petition shows only one plaintiff; and it nowhere appears that he was an agent or attorney for the plaintiff. Sec. 200, code of 1859, Comp. Laws, 155. The order of attachment

issued upon such an affidavit was wholly unauthorized by law.

The notice published was insufficient in not containing the prayer of the petition, as well as a statement of the object of the petition. The terms, object and prayer as used in § 80 of the code then in force, cannot be construed to mean or intend the same thing. Comp. Laws, 1862, p. 136 ; 39 Ala., 227.

2. The record shows that the defendants were non-residents, but fails to show that they were personally served with process, or that they appeared in the action ; and fails to show, either from the affidavit for the attachment, the affidavit for publication, or the return of the sheriff, that the defendants had property within the jurisdiction of the court, and failed to show whose property was attached. 2 Kas., 340 ; 25 Iowa, 269.

3. There was no error in refusing to permit plaintiffs in error to amend affidavits on file, because from the record there is an absence of jurisdiction of the court, and the defects cannot be supplied by amendment, or supplemental proceedings, so as to make the proceedings valid from the beginning. 23 Barb., 591; 16 Iowa, 97; Drake on Attach., §§ 202, 203, 210; 13 Mass., 270.

The opinion of the court was delivered by

BREWER, J.: This case is similar in many respects to the cases of *Foreman v. Carter*, and *Challis v. Headley and Carr*, 9 Kas., 674, 684. Like them it comes here from a decision of the district court of Atchison county, setting aside a judgment as void. Many of the same questions arise in this that were in those cases. But there are some defects in the proceedings here which render the judgment void, and compel us to affirm the decision of the district court. One of these defects only will require notice. The judgment set aside was rendered in an attachment suit. The affidavit for attachment was made by one Robert L. Pease, who in the affidavit swears that he is one of the plaintiffs in the action. As the pleadings and entire proceedings in the case, other than this

affidavit, show that there was but one party plaintiff, and that one a corporation, there is evidently a mistake in this affidavit. Indeed, in an affidavit for publication filed some days afterwards, the same party (Robert L. Pease) makes oath that he is the authorized agent of the plaintiff. Upon the filing of this affidavit an order of attachment was issued, real estate seized, an affidavit for publication filed, as personal service could not be had, publication made, and judgment entered by default. The judgment therefore depends for its validity upon the sufficiency of this affidavit. If that fail, the judgment must fall; for if no attachment could rightfully issue, no publication could legally be made, and the defendants were never brought into court. Section 200 of the code of 1859, Comp. Laws, p. 155, in force at the time of the commencement of this suit, authorized the issue of an order of attachment when there was filed in the clerk's office an affidavit of "the plaintiff, his agent, or attorney," etc. The proceedings in attachment are purely statutory, and only by following the provisions of the statute is there power to act. The filing of an affidavit by one of the parties authorized by the statute is essential to the validity of any order of attachment. Here the plaintiff, being a corporation, could not and did not make the affidavit; nor is there anything in the record to show that the party who did was at the time either an agent or attorney. In fact, for all the record discloses, the affidavit was a volunteer affidavit, by an unauthorized party. Upon such an affidavit no order of attachment could rightfully issue. *Willis v. Lyman*, 22 Texas, 268; *Pool v. Webster*, 3 Metc., (Ky.,) 278; *Dean v. Openheimer*, 25 Md., 368. It may be said that the affidavit for publication, filed a few days thereafter, showed that Pease was the agent of plaintiff. It only shows that he was *then* the agent. This relation once shown to exist may be presumed to continue throughout the case, and to justify his participation in the subsequent proceedings. But we know no rule by which we can make such a presumption relate backward, and hold that because he is shown to have been an agent at one time, he

was such agent at a previous time.    Besides, the affidavit for attachment attempts to give Pease authority for making it. He asserts that he is *himself* "one of the plaintiffs."   It is not silent as to his authority, so that we might appeal to any presumption.   He asserts his authority.   But the petition shows he had no such authority.   It is a matter of grave doubt also whether the notice of publication was sufficient, but as this disposes of the case we forbear any inquiry into that question. The order of the district court setting aside the judgment will be affirmed.

All the Justices concurring.